UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| CLIFTON RAY CHOYCE | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. C-00-86 |
| | § | |
| GARY L. JOHNSON, Director, TDCJ-ID | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner is an inmate in the Texas Department of Criminal Justice - Institutional Division, (TDCJ-ID), and is currently incarcerated at the McConnell Unit in Beeville, Texas. The actions about which he complains occurred at the McConnell Unit. Proceeding *pro se* and *in forma pauperis,* petitioner filed this habeas corpus petition, pursuant to 28 U.S.C. §§ 2241 and 2254, on February 28, 2000. Petitioner claims that his rights under the 14th Amendment to the Constitution were violated at a disciplinary hearing where he lost 500 days of good time after he was found guilty of participating in a riot and refusing to obey orders. He claims he was deprived of an impartial disciplinary hearing, denied his right to call and cross-examine a witness and prejudiced by being retried. Respondent filed a motion for summary judgment on September 18, 2000 (D.E. 19) to which petitioner replied on October 31, 2000 (D.E. 22). Respondent concedes that petitioner has exhausted his administrative remedies.

### BACKGROUND

The facts are viewed in the light most favorable to petitioner. Petitioner's claim that he lost good time credits without due process of law stems from an incident occurring on February 11, 1995. Petitioner asserts that at approximately 11:45 p.m. he was in the K-1 day room when several corrections officers appeared with a tear gas gun. The officers ordered the

inmates to "rack up," or go to their cells. Petitioner went to his cell door and waived at the picket officer to open the cell door, but he refused to do so. About 10 minutes later, the inmates who were in the day room were sprayed with tear gas.

A disciplinary hearing was held on February 16, 1995. Petitioner claims that he asked to have present the officer who was in the control picket on the night of the incident but his request was denied. The reason given for the denial was that there was no way of finding out who worked the control picket on the night of the incident. Petitioner says the testimony of the officer was relevant because the officer refused to open petitioner's door when petitioner asked him to do so.

Petitioner filed an application for habeas corpus relief in 1995, arguing that officers had video taped the incident and that he had asked to see the video tape and have it presented as evidence at his hearing but his request had been denied. The video tape was produced *in camera* and after reviewing the tape, it was determined that in order to protect petitioner's due process rights in the disciplinary hearing procedure, the hearing officer should have viewed the tape. It was ordered that petitioner either be granted another disciplinary hearing or have his 500 days of good time restored (D.E. 22, Ex. C).

Petitioner had another disciplinary hearing on December 21, 1998. He was given notice of the hearing in case number 990118440 on December 18, 1998. Petitioner requested that the charging officer and the officer who was working the picket on the night of the incident be present at the hearing. Notes indicate that petitioner's counsel substitute interviewed Officer Hester, who was in the control picket on the night of the incident. Petitioner claims that a statement by Officer Hester was introduced at the hearing, although the

2

statement is not part of the record. Petitioner's counsel substitute also interviewed Sgt. Ambriz, the charging officer, and inmate Hicks and she reviewed the video tape. Sgt. Ambriz testified by telephone and the offense report he prepared in 1995 was submitted and made part of the record.

Petitioner was found guilty of participating in a disturbance and failing to obey orders. Notes by the hearing officer indicate that he watched the video tape and there was no exculpatory evidence on petitioner's behalf but it showed him milling around the day room during the incident in disobedience of staff orders to go to his cell. He indicated that he relied on the testimony of the charging officer at the hearing, the statement by Officer Hester and the video tape of the riot. Petitioner was punished by having to remain in Line Class 3 and losing 500 days of good time (D.E. 19, Ex. B).

## APPLICABLE LAW

### A. Summary Judgment Standard

Rule 56(c) provides that "[summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988).

Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. Celotex Corp., 477 U.S. at 322, 106 S. Ct. at 2552; Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986); Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. denied, 113 S. Ct. 82 (1992). The controverted evidence must be viewed in the light most favorable to the non-movant and all reasonable doubts must be resolved against the moving party. Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188 (1990). Summary judgment is mandated if, after adequate time for discovery and upon motion, the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. Celotex Corp., 477 U.S. at 322, 106 S. Ct. at 2552. "In such situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Id. at 322-23, 106 S. Ct. at 2552.

**B. Habeas Corpus**

In a habeas corpus action challenging the proceedings at a disciplinary hearing, a petitioner must show that he is in custody in violation of the Constitution, laws or treaties of the United States. Petitioner in this case is alleging deprivation of his 14th amendment right to due process. In Sandin v. Conner, 515 U.S. 472, 483-484, 115 S.Ct. 2293, 2300 (1995), the U.S. Supreme Court described the limited instances in which prison inmates can make out a claim that a liberty interest has been taken without due process.

> The time has come to return to the due process principles we believe were correctly established and applied in [Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963 (1974) ] and [Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532 (1976) ]. Following Wolff, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

The loss of good time credits as the result of a disciplinary hearing may implicate the higher levels of due process contemplated by the Supreme Court in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Madison v. Parker, 104 F.3d 765, 769 (5th Cir. 1997). The loss of good time credits under a state statute that bestows mandatory sentence reductions for good behavior must be accompanied by certain procedural safeguards in order to satisfy due process. Id. The procedural safeguards were outlined in Wolff and include the following: (1) Written notice of the charges must be given to the inmate; (2) The inmate must be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; (3) There must be a written statement by the fact finders as to the evidence relied on and reasons for the decision. Wolff, 418 U.S. at 564, 94 S.Ct. at 2979.

In this case petitioner received written notice of the charges and there was a written statement by the hearing officer describing the evidence he relied on and the reason for the decision (D.E. 19, Ex. B). Accordingly, the only possible claim petitioner could make is that he was not allowed to call a witness or present documentary evidence in his defense. The record shows that petitioner requested that Officer Hester, the picket officer during the riot, be

present and testify (D.E. 19, Ex. B, "Service/Investigation Worksheet"). Officer Hester did not appear at the hearing, either in person or on the telephone, but petitioner's counsel substitute noted that she interviewed him[1].

Prisoners in disciplinary proceedings have a qualified right to call witnesses in their defense, but they do not have a right to confront or cross-examine witnesses. Wolff, 418 U.S. at 566-568, 94 S.Ct. at 2979-2981. In this case, the hearing officer did not call Officer Hester, the requested witness, but the counsel substitute interviewed him and submitted some sort of statement from him.[2] The issue of whether it is sufficient for due process purposes to have prison staff interview requested witnesses and summarize their testimony in an unsworn report when it is otherwise feasible to have the witness testify has been examined by three appellate courts, all of which determined that such a policy violates due process. See Whitlock v. Johnson, 153 F.3d 380, 388 (7th Cir. 1998); Mitchell v. Dupnik, 75 F.3d 517, 525 (9th Cir. 1996); Bartholomew v. Watson, 665 F.2d 915, 917-918 (9th Cir. 1982); Ramer v. Kirby, 936 F.2d 1102, 1103-05 (10th Cir. 1991).

There is no evidence that respondent has a policy of interviewing requested witnesses rather than having them testify, but it is clear that in petitioner's case the witness was not allowed to testify at the hearing and respondents did not give a reason for the denial.

---

[1] In response to a grievance petitioner filed regarding this matter, a prison official stated that Officer Hester testified at the hearing, but the record does not support this statement (D.E. 19, Ex. C).

[2] It is assumed that the statement was oral because the records of the disciplinary hearing, including a sworn statement by Warden Prasifka that the records are complete, did not include a written statement from Hester (D.E. 21, Ex. B).

6

Petitioner claims that he asked that the picket officer, (Hester), testify in 1995 but was told at that time that Officer Hester's identity was unknown. Respondent does not refute petitioner's claim. Then, at the 1998 hearing, petitioner, apparently having learned Hester's identity, once again requested that he be allowed to testify. The hearing officer did not call him, although Sgt. Ambriz, the charging officer, was allowed to testify by telephone.

> [P]rison officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify, but . . . they may do so either by making the explanation a part of the 'administrative record' in the disciplinary proceeding, or by presenting testimony in court if the deprivation of a 'liberty' interest is challenged because of that claimed defect in the hearing. In other words, the prison officials may choose to explain their decision at the hearing, or they may choose to explain it 'later.' Explaining the decision at the hearing will of course not immunize prison officials from a subsequent court challenge to their decision, but so long as the reasons are logically related to preventing undue hazards to "institutional safety or correctional goals," the explanation should meet the due process requirements of Wolff.

Ponte v. Real, 471 U.S. 491, 497, 105 S.Ct. 2192, 2196, 85 L.E.2d 553 (1985).

Respondent offered no explanation for not allowing Officer Hester to testify. Also, although the hearing officer claimed to rely in part on Officer Hester's statement in finding petitioner guilty of the disciplinary infraction, the record is void of evidence regarding the content of Officer Hester's statement. For these reasons, respondent should not be granted summary judgment on the issue of whether petitioner was afforded due process at the disciplinary hearing. Rather, a hearing should be held to determine the facts surrounding petitioner's claim that he was denied his constitutional right to due process when Officer Hester was not called as a witness in his disciplinary hearing.

## RECOMMENDATION

Respondent Johnson's motion to dismiss for summary judgment (D.E. 19) should be DENIED and a hearing should be held to develop the facts relevant to petitioner's claim.

Respectfully submitted this 23 day of February 2001.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Services Auto Ass'n, 79 F.3d 1415 (1996) (en banc).