United States District Court
Southern District of Texas
FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

**JUL 1 0 2001**

MICHAEL N. MILBY, CLERK

| | | |
|---|---|---|
| *CLIFTON RAY CHOYCE,* | § | |
| Petitioner, | § | |
| | § | |
| *V.* | § | CIVIL ACTION NO. C-00-86 |
| | § | |
| *GARY L. JOHNSON, DIRECTOR,* | § | |
| *TEXAS DEPARTMENT OF CRIMINAL* | § | |
| *JUSTICE, INSTITUTIONAL DIVISION,* | § | |
| Respondent. | § | |

**RESPONDENT'S OBJECTIONS TO THE SUPPLEMENTAL
MEMORANDUM AND RECOMMENDATION**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES respondent, Gary L. Johnson, Director, Texas Department of Criminal Justice, Institutional Division, ("the Director"), by and through his attorney, the Attorney General of Texas, and files this Respondent's Objections to the Supplemental Memorandum and Recommendation.

**I.**

This is a habeas corpus case brought by a Texas state prisoner, Clifton Ray Choyce, ("Choyce"), under 28 U.S.C. §§ 2241, 2254. The Director received the Supplemental Memorandum and Recommendation, ("SM&R"), on June 25, 2001, with the recommendation that Respondent Johnson's motion for summary judgment be denied and petitioner's application for habeas corpus relief be granted. SM&R at 8. The Director is filing his objections within ten days of the date of service.[1] SM&R at 4; FED. R. CIV. P. 6(a).

---

[1] The Director was allowed to file objections on or before ten days from the date of service. SM&R 4. Thus, because intermediate Saturdays, Sundays, and legal holidays are excluded when the time allowed for a response is less than eleven days, objections are to be filed on or before July 10, 2001. FED. R. CIV. P. 6(a).

44.

## II.

The Magistrate Judge recommends that summary judgment be denied and the federal writ petition granted because respondent has given no indication that evidence exists to show that allowing Officer Hester to testify would have compromised TDCJ-ID safety or correctional goals. SM&R 3. The Respondent objects to this recommendation because due process does not require that Choyce be allowed to present or confront such witness.

The Magistrate Judge correctly states that the only issue in this case is whether petitioner's due process rights were violated when he asked that Officer Hester, whom he believed worked the picket at the time of the riot, be called as a witness. SM&R 2. Further, the Magistrate Judge correctly states that "prisoners in disciplinary proceedings have a qualified right to call witnesses in their defense." SM&R 2. Furthermore, the Magistrate Judge correctly asserts that prisoners "do not have a right to confront or cross-examine witnesses." SM&R 2. The respondent believes that given the fact that Officer Hester was adverse to Choyce, Choyce had absolutely no right to confront or cross-examine this witness. Exhibit A (Officer Hester's witness statement); Tape Transcription "TT" 7.

In his witness statement read into the record, Officer Hester's statement was that Inmate Choyce refused the order to rack up and that Inmate Choyce was one of the inmates who was "trying to seal the trash can off by using a blanket or towel." Exhibit A; TT 7. This statement clearly shows that Officer Hester was adverse to Choyce; therefore, any questions Choyce would have had for Officer Hester would have amounted to confrontation and cross-examination. Therefore, because *Wolff* specifically holds and the Magistrate Judge agrees that there is no right to confrontation or cross-examination, Choyce's due process rights were not violated. *Wolff v. McDonnell*, 418 U.S. 539, 567-69, 94 S. Ct. 2963, 2980 (1974).

Moreover, the Magistrate Judge states that Respondent has never argued or offered evidence that Officer Hester was excluded from testifying because of institutional safety or correctional goals. SM&R 3. However, the Respondent objects to this because given the facts

2

of the case, due process does not require that such reason be made.  In the first place, according to *Wolff* and *Baxter*, the court suggested that it would be useful for prison authorities to state why certain witnesses were denied, but they ultimately held that due process did not require them to provide written reasons for denying inmates the limited right to call witnesses in their defense. *Wolff*, 418 U.S. at 566-68, 94 S. Ct. at 2980; *Baxter v. Palmigiano*, 425 U.S. 308, 322, 96 S. Ct. 1551, 1560 (1976).  Furthermore, the Supreme Court made no such suggestion with respect to confrontation and cross-examination which  "stand on a different footing because of their inherent danger and the availability of adequate bases of decision without them." *Baxter*, 425 U.S. at 322, 96 S. Ct. at 1560; *see Wolff*, 418 U.S. at 567-68, 94 S. Ct. at 2980-81. "Mandating Confrontation and cross-examination, except where prison officials can justify their denial on one or more grounds that appeal to judges, effectively preempts the area that *Wolff* left to the sound discretion of prison officials." *Id.*

Therefore, according to *Wolf* and *Baxter*, which control cases dealing with adverse witnesses, the decision not call an adverse witness at the hearing is left to the sound discretion of prison officials.  *See Id.; see also, Mitchell v. Dupnik*, 75 F.3d 517, 526 (9th Cir. 1996) ("An entirely different balancing of concerns applied to confrontation and cross-examination of those witnesses: greater likelihood of hostility and resentment between the accused and the witness, which could erode discipline and threaten corrective aims; lengthening of the proceedings; and a lesser due process interest for the inmate in confronting these witnesses than in calling his own to provide ***exculpatory evidence***.") (Emphasis added).

Further, even if Officer Hester were not adverse, due process does not require that TDCJ-ID explain at the hearing or in the administrative record why witnesses were not allowed to testify. *Ponte v. Real*, 471 U.S. 491, 497, 105 S. Ct. 2192, 2196 (1985).

Finally, the Magistrate Judge addresses the issue of whether it is sufficient for due process purposes to have prison staff interview requested witnesses and summarize their testimony in an unsworn report when it is otherwise feasible to have the witness testify.  SM&R 2.  In support

3

for the finding that summaries of witnesses statements would not satisfy due process concerns, the Magistrate Judge refers to four cases one from the Seventh Court of Appeals, two from the Ninth and one from the Tenth. However, the Respondent objects first to the relevance of this issue and second to the fact that all four of those cases refer to situations where the correctional facility had adopted a policy of blanket denial regarding all live witnesses (*Whitlock*, *Mitchell*, *Bartholomew*) or an entire class of witnesses, i.e., staff members (*Ramer*). (Citations omitted). There has been no evidence presented nor has Choyce even alleged that TDCJ-ID has a policy of blanket denials for requested witnesses. Furthermore, all of these cases and *Ponte* included are not on point because the witnesses requested in those cases either had no direct knowledge, had exculpatory evidence, or could have had exculpatory evidence, but the record did not contain an indication of what their testimony would have been. In Choyce's case, as discussed above, Officer Hester's statement was adverse, thus, such witness testimony would not have been "in his defense," rather it would have been against his defense (adverse) to present the witness at the hearing. Exhibit A; TT 7.

## III.

WHEREFORE, PREMISES CONSIDERED, the Director moves the district court to apply these objections to the instant petition, grant the Director's motion for summary judgment, and deny Choyce's federal writ petition.

Respectfully submitted,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

MICHAEL T. McCAUL
Deputy Attorney General for
Criminal Justice

4

S. MICHAEL BOZARTH
Assistant Attorney General
Chief, Habeas Corpus Division


DENISE A. VILLARREAL*
Assistant Attorney General
State Bar No. 24008212
Southern Dist. No. 25,314

*Attorney-in-Charge

P. O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 936-1400
(512) 936-1280 (Fax)

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I, Denise A. Villarreal, Assistant Attorney General for the State of Texas, do hereby certify that a true and correct copy of the above and foregoing Respondent Johnson's Objections to Supplemental Memorandum and Recommendation has been served by placing same in the United States mail, postage prepaid, on this the 9th day of July, 2001, addressed to:

Paul G. Kratzig
  Counsel for Clifton Ray Choyce
600 Leopard
Suite 2100
Corpus Christi, Texas 78473


DENISE A. VILLARREAL
Assistant Attorney General

5

A




TEXAS DEPARTMENT OF CRIMINAL JUSTICE
**INSTITUTIONAL DIVISION**

# Inter-Office Communications

**To** DISCIPLINARY COMMITTEE      **Date** _12-18-98_

**From** _D Burton_ CS 1      **Subject** WITNESS STATEMENT

**TIME:** _11:10 pm_      **CASE #** _99 0118440_

**OFFICER:** _A Foster,_      **RANK:** _COIII_    **SHIFT/CARD ASSGN:** _____

**INMATE:** _____      **TDCJ#** _____    **HOUSING ASSIGN:** _____

                  Clemens Unit
                  3rd Shift

**STATEMENT OF FACTS BY WITNESS:**

_via phone_

That day (on 2-11-95) there had been a stabbing on 8K-2 Sections. We started racking up each Section starting with 2 Section. Next was 3 Sections which we ended up gasing because they refused to rack up and tensions were high. By the time we got to 8K-1 Sections - the inmates knew we were coming and prepared for the gas. Once we got to 1 Sections - all inmates were ordered to rack-up. Many of them refused which I/m Choyce was one of them. Some inmates had gotten a trash can and placed it covering the tray-slot on the 1 Section door. I/m Choyce was one of the inmates who were trying to seal the trash can off by using a blanket or towel. Lt. Blackwell had used a tray slot bar to move →

CS-09 (Rev.07/90)     (Defense)                     J0622

the trash can away and chemical agents were applied. The dayroom was filled with smoke and we went in. I don't recall where i/m Choyce was after this point.

During this incident — I was on the floor and I was part of the 5 man riot team and I saw the whole incident.