United States District Court
Southern District of Texas
FILED

MAR 4 - 2002

Michael N. Milby, Clerk

1              IN THE UNITED STATES DISTRICT COURT

2              FOR THE SOUTHERN DISTRICT OF TEXAS

3                    CORPUS CHRISTI DIVISION

4    CLIFTON CHOYCE,                )   CIVIL ACTION
                                    )
5                    PETITIONER,    )   CA-C-00-86
                                    )
6    VS.                            )   CORPUS CHRISTI, TEXAS
                                    )
7    GARY JOHNSON,                  )   APRIL 12, 2001
                                    )
8                    RESPONDENT.    )
     . . . . . . . . . . . . . . . . . . . . . . . . . . .

9

                    TELEPHONIC MOTION HEARING

10

                         BEFORE THE
11        UNITED STATES MAGISTRATE B. JANICE ELLINGTON

12

13   APPEARANCES FOR:

14   THE PETITIONER:           MR. PAUL KRATZIG
                               600 LEOPARD, STE. 2100
15                             CORPUS CHRISTI, TEXAS 78470

16   THE RESPONDENT:           MS. DENISE VILLARREAL
                               ATTORNEY GENERAL'S OFFICE
17                             P.O. BOX 12548
                               AUSTIN, TEXAS 78711
18

     COURT RECORDER:           MS. GRACE LERMA
19

     PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.
20

     TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE:
21

     JEAN BARTZ
22   P.O. BOX 18658
     CORPUS CHRISTI, TEXAS 78480
23   361-937-8057

24

25

71.

```
1                        *  *  *  *  *

2        (Proceedings commenced at 10:40 a.m.)

3             THE COURT:  Good morning.  I'm calling the

4    case of Civil Action C-00-86, Clifton Choyce versus

5    Gary Johnson, et al.  Mr. Choyce, are you on the line?

6             MR. KRATZIG:  Paul Kratzig, court-appointed

7    counsel for Petitioner, Mr. Choyce.

8             THE COURT:  Thank you.  Appearance for the

9    defendant?

10            MS. VILLARREAL:  My name's Denise Villarreal.

11   I'm representing Gary Johnson, the respondent.

12            THE COURT:  Good morning, Mr. Kratzig, Ms.

13   Villarreal.  This is Magistrate Judge Janice

14   Ellington.  Thank you for being available.  I wanted

15   to have a hearing briefly on Mr. Kratzig's motion on

16   behalf of Mr. Choyce to temporarily withdraw the --

17   his emergency motion to withdraw the videotapes.  Mr.

18   Kratzig, the main thing I wanted to do was make sure

19   that we were on the same page.  I wasn't quite sure

20   what you wanted.  Did you want the video of the date

21   that this incident occurred?

22            MR. KRATZIG:  Yes, Your Honor.  A couple of

23   different things that I have requested.  I previously

24   requested is to set the perspective here, the audio-

25   tape, and I believe Respondent, Mr. Johnson, did also
```

1  and we have an arrangement to make that available to

2  me once it's been copied by the Respondent.

3         THE COURT:  Okay.

4         MR. KRATZIG:  The problem is that in order

5  for me to properly assess the critical element here,

6  and that is the failure to have Officer Hester at the

7  hearing that is the subject of this lawsuit, I need to

8  see the videotape because Officer Hester and the vid-

9  eotape sort of go together.  The Court, I think, has

10  reviewed the videotape previously in camera and after

11  that I think the Court ordered another hearing and

12  then another hearing was held in the prison and the

13  hearing officer indicated, I believe, that the hearing

14  officer had reviewed the videotape and that the hear-

15  ing officer relied on the testimony of the charging

16  officer at the hearing that was taken by Officer

17  Hester and the videotape.  However, when I reviewed

18  the Court's summary judgment in the case, that is the

19  memorandum and recommendation regarding motion for

20  summary judgment, it appears that the Court  has

21  determined that a hearing should be held to determine

22  the facts surrounding the claim by Mr. Choyce that he

23  was denied his constitutional right to due process

24  when Officer Hester was not called as a witness in the

25  disciplinary hearing.  I think that's the problem with

1    the key issue involved in this hearing.  And in order

2    to assess the Petitioner's rights with regard to

3    Officer Hester, I think those two go hand-in-hand.

4    Officer Hester and the videotape almost have to go to-

5    gether because the videotape actually shows what was

6    happening at the hearing and if, in fact, it is

7    determined that Officer Hester is necessary, I think

8    the videotape is part and parcel of that, and I don't

9    know how I can adequately represent Mr. Choyce and

10   present his case without having an opportunity to see

11   the videotape that apparently everybody else has seen.

12        THE COURT:  All right.  Ms. Villarreal, does

13   the Respondent still have a copy of that videotape?

14        MS. VILLARREAL:  Yes, we do.  Since it was

15   the basis of the previous federal writ petition, there

16   is a copy of it that I have.  They probably do not

17   have the master copy any longer.

18        MR. KRATZIG:  I thought it was viewed in

19   camera and I was thinking it might be part of the

20   court record down in Corpus Christi.

21        THE COURT:  It is, Mr. Kratzig.  I was just

22   trying to figure out what was going to be easier.  We

23   checked yesterday and it's still -- we never used it

24   in the second case because I had already seen it in

25   the first one, of course, and I don't know whether we

1  have a copy or the original, but we did check
2  yesterday with the clerk and we've got a copy here,
3  and I also understand that we have the capability to
4  duplicate those.  So what I was going to suggest --
5  one of the other reasons why I set this hearing was to
6  make sure that you did have the audiotape and that we
7  were on the same page about those various tapes.  But
8  the  --

9          MR. KRATZIG:  At this point, I do not have
10  the audiotape in hand, Judge, and have an
11  understanding with the State to provide me with a copy
12  once they have their copy.  Is that right, Ms.
13  Villarreal?

14          MS. VILLARREAL:  Yes, sir.  We just got our
15  copy yesterday so I have them right now.  We have sent
16  one of the copies off to be transcribed and will be
17  sent to today.  We are expecting to get transcription
18  sometime next week but I can go ahead and send you a
19  copy of the tape today.

20          MR. KRATZIG:  That'd be fine.  I appreciate
21  that, Your Honor, I just wanted to clear that up to
22  let you know -- I don't have it in hand now but it's
23  my understanding I should have it prior to the
24  hearing.

25          THE COURT:  Okay.  With respect to the

1  videotape, what I would like to do, seems like it

2  would be easier to do this, if there's no objection by

3  either side I'd like to just transfer, since that case

4  has already been resolved and the appeal dismissed and

5  so forth, just transfer that videotape and make it

6  part of the record in this case.  Do either one of you

7  have any objection to my doing that sua sponte?

8          MR. KRATZIG:  No.

9          MS. VILLARREAL:  The only objection I have is

10  that I don't think that the videotape is relevant to

11  the evidence hearing that's been set.

12          THE COURT:  I understand your position, Ms.

13  Villarreal, and I certainly am not going to object to

14  your arguing the relevance of it, but for convenience

15  sake, I'd just like to make it part of the record in

16  this case.  Do you have any objection to that?

17          MS. VILLARREAL:  No, Your Honor.

18          THE COURT:  All right.  And then I understand

19  you already have a copy and, Mr. Kratzig, you're CGA

20  appointed and so what we'll do is I'll instruct the

21  clerk to make a copy of the videotape and to provide

22  it to you.  Is that all right?

23          MR. KRATZIG:  And I can come pick it up

24  whenever they call me.

25          THE COURT:  Whenever they call you, right.

1  And then there was another matter -- couple other

2  things that have come up.  One thing I wanted to

3  mention to Mr. Kratzig, which was I heard through the

4  grapevine, Mr. Kratzig, that you had been appointed

5  apparently on several cases and I just wanted to let

6  you know that when your name came up, it came up

7  because the clerk had generated a list, and this is a

8  CJA appointment as opposed to an appointment in a

9  civil rights case, so there are CJA funds available to

10 pay you --

11         MR. KRATZIG:  I'm not worried about it

12 anymore.  I had a momentary lapse where I did some

13 whining and moaning but I'm okay.  I recognize my duty

14 and --

15         THE COURT:  Well, I appreciate your taking

16 the case.

17         MR. KRATZIG:  Once in awhile we all whine a

18 little bit.

19         THE COURT:  I didn't want to --

20         MR. KRATZIG:  What I did is I asked one the

21 clerks.  I was under the understanding that 2254

22 previously did not provide for CJA funds and I was

23 inquiring as to whether, in fact -- I heard they were

24 available on this particular case and that was

25 contrary to my prior experience, so that's why I

Case 2:00-cv-00086   Document 71   Filed in TXSD on 03/04/2002   Page 8 of 23

1  inquired about that.

2       THE COURT:  They are always supposed to be

3  available in 2254 cases under the CJA statute.  I

4  think it's 18 USC Section 3006, there is a reference

5  to 2254 so I have always had the clerks advise counsel

6  that CJA funds are available on 2254.

7       MR. KRATZIG:  Just for your information, Your

8  Honor, I don't want to waste Ms. Villarreal's time on

9  that, it's ancient history.  We had a couple of

10  hearings on a felony, Mr. Mendez, where I was court

11  appointed.  You might remember those, I think it has

12  been about four years ago.  And --

13       THE COURT:  I do remember --

14       MR. KRATZIG:  Had both your court and again

15  in front of Judge Head on appeal or rehearing or

16  whatever you call it, and at that point it was my

17  understanding they were not available and that's fine.

18  That's just part of life.  I'm not worried about it.

19       THE COURT:  Well, I'm sorry --

20       MR. KRATZIG:  I really thought at the time

21  they were not available, that's what I have been

22  previously told by clerk's office on 2254's are not

23  available and I made (indiscernible) this matter which

24  was actually fairly time consuming.

25       THE COURT:  Well, I appreciate your letting

1    me know.  I'll talk to the clerk and make sure that
2    (indiscernible -- the Court and Mr. Kratzig overtalk-
3    ing)

4           MR. KRATZIG:  -- I just assumed they were not
5    available.

6           THE COURT:  I know that Judge Jack thought
7    they were not available.

8           MR. KRATZIG:  That was on a court appointment
9    with Judge Head on a guy who was charged with murder.
10   I don't know, you may not remember it.  You handle a
11   lot of these things.  In fact, it was just at the
12   counsel table.

13          THE COURT:  Not right off the top of my head.
14   Okay.

15          MR. KRATZIG:  Judge, I got to mention one
16   more thing while Ms. Villarreal's on the line, because
17   this is something that -- in view of the videotape
18   transcript which I understand probably shouldn't take
19   a lot of time, but when this case came down I was not
20   aware that -- I'm on a non-profit board that is a
21   5013C corporation and I'm on the executive committee
22   which has a meeting in Houston on the 24th.  It's an
23   every-other-month meeting.  I was not aware at the
24   time of the appointment that we had a conflict between
25   the 24th in your court and that meeting.  If it's not

1  going to discombobulate anybody, I'd like to file a
2  motion if possible to postpone the hearing in your
3  court on Mr. Choyce's matter.

4          THE COURT:  All right, let me --

5          MR. KRATZIG:  If it's not, obviously I can --
6  this is more important than my executive committee
7  hearing but it's a matter that I'm on a
8  (indiscernible) committee and there's some legislation
9  matters we need to review and I really would like to
10 attend the meeting if possible.

11         THE COURT:  Let me hear from Ms. Villarreal
12 but I'm going to ask the clerk to step out and get my
13 calendar, maybe we can talk about another -- I did
14 want to ask if both of you were going to be ready for
15 the hearing on the 24th and also, Ms. Villarreal, is
16 your motion still pending?  I know you filed a motion
17 with Judge Head and wanted some sort of a ruling on it
18 before --

19         MS. VILLARREAL:  Yeah, it should have been
20 labeled a Motion for Reconsideration.  I think I went
21 overboard and called it a motion to alter the
22 judgment, given that there's no judgment yet and it's
23 only an order.

24         THE COURT:  I would like to accommodate you
25 but if you would like to have my setting of the

1  hearing stay pending Judge Head's decision, I think
2  that's something that you need to bring up to him
3  because when he sends a case back to me he expects me
4  to dispose of it promptly unless he tells me not to
5  conduct my hearing, I feel like I have an obligation
6  because of his order to go ahead and go through with
7  it, so I did want to make sure you were aware of that.
8  I mean, my feelings aren't going to be hurt if you
9  want to go to Judge Head and see if he would stay
10  this, but I think under the circumstances that I have
11  a responsibility to just move forward on it.

12         MS. VILLARREAL:  Okay.

13         MR. KRATZIG:  Would you give me just a
14  moment, Your Honor?

15         THE COURT:  Sure.

16         MR. KRATZIG:  I'm looking for that order -- I
17  don't -- just a moment here -- I have Judge Head's
18  order denying Respondent Johnson's motion for summary
19  judgment, and I've got Respondent Johnson's motion to
20  alter -- is that the one you're talking about, Ms.
21  Villarreal -- motion to amend the judgment?

22         MS. VILLARREAL:  No, (overtalking) -- to the
23  order because it came down before my time for
24  submitting objections to the recommendation had
25  lapsed.

1          MR. KRATZIG:  So you're -- the ruling on your

2  Respondent's objection to memorandum and

3  recommendations, is that what we're waiting on?

4          MS. VILLARREAL:  Yeah.  The objections and

5  then -- actually mislabeled so I guess I can send

6  something and tell them and maybe we can have that

7  ruled on before we have the hearing.

8          MR. KRATZIG:  Okay.  I apologize.  I do not

9  -- I thought that that had been ruled on and I'm

10  apparently in error so basically, Judge Ellington, I

11  need to -- I need to postpone it to make the filing

12  with Judge Head.

13          THE COURT:  No, no, no.  We've really

14  confused you, Mr. Kratzig.

15          MR. KRATZIG:  I am confused.

16          THE COURT:  Let's talk first about a date for

17  the hearing.  Ms. Villarreal, do you have an objection

18  to a continuance of the hearing?

19          MS. VILLARREAL:  No, not --

20          THE COURT:  I realize you don't want the

21  hearing to take place at all until Judge Head rules on

22  --

23          MS. VILLARREAL:  So my opposition to it isn't

24  even rescheduling, but --

25          THE COURT:  Okay.  We're on for the 24th now.

Case 2:00-cv-00086   Document 71   Filed in TXSD on 03/04/2002   Page 13 of 23

1 Mr. Kratzig, Ms. Villarreal, I can do it any time that

2 week and then I've got the judicial conference so

3 we'll have to look for a date in May.  Are you both

4 available later on that week?

5 　　　　MR. KRATZIG:  I would be, the 25th, 26th,

6 either one, 26th preferably.

7 　　　　THE COURT:  And Ms. Villarreal?

8 　　　　MS. VILLARREAL:  I have another evidence

9 hearing scheduled in Fort Worth for the 26th so I

10 would not be able to do that.

11 　　　　MR. KRATZIG:  The 25th.

12 　　　　THE COURT:  The 25th or 27th is fine.

13 　　　　MS. VILLARREAL:  Because it's in Fort Worth,

14 I'll be traveling the 25th and the 26th.  That makes

15 it difficult to travel -- be in two places at one

16 time.

17 　　　　MR. KRATZIG:  Your Honor, is all of May out

18 of line?  How about May 1st or 2nd?

19 　　　　THE COURT:  I'll be at the judicial

20 conference.  I could do it a little bit later in May,

21 Friday May 11th or the following week, May 14th -- the

22 week of May 14th, I could do it that week.

23 　　　　MR. KRATZIG:  That week.

24 　　　　MS. VILLARREAL:  I could probably do it that

25 week, too.

1           THE COURT:  All right.  Let's see, let's go

2   ahead and -- how about Tuesday, May 15th?

3           MR. KRATZIG:  That's good.

4           MS. VILLARREAL:  That's fine with me.

5           THE COURT:  We'll do it -- let's do it in the

6   afternoon so you can travel in the morning if you'd

7   like -- 1:30 on Tuesday, May 15th, Mr. Kratzig, is

8   that all right with you?

9           MR. KRATZIG:  Yes, Your Honor.

10          THE COURT:  Ms. Villarreal, is that all right

11  with you?

12          MS. VILLARREAL:  Yes, ma'am.

13          THE COURT:  All right.

14          MR. KRATZIG:  Your Honor, could we revisit

15  something?  I'm a little bit confused on one thing.

16          THE COURT:  Okay.  The evidentiary hearing

17  now is scheduled for 1:30 Tuesday, May 15th, and we'll

18  issue a new writ for Mr. Choyce.  Now, Mr. Kratzig?

19          MR. KRATZIG:  The state of the record, as I

20  understand it at this point, is that we have a hearing

21  scheduled but Respondent's objection to memorandum and

22  recommendation which was filed on -- my file stamped

23  copy is not clear, but basically that has not been

24  ruled, is that correct?

25          MS. VILLARREAL:  Right.

1          MR. KRATZIG:  Ms. Villarreal was thinking

2  earlier was that if for some reason Judge Head

3  recognizes her objections and so forth, as I

4  understand it, Ms. Villarreal --

5          THE COURT:  It may make the whole issue moot.

6  And what I'm going to do is I will send a memo to

7  Judge Head with the file and tell him -- give him the

8  date of our hearing and then if he is able to, I'm

9  sure that he'll get to this.

10          MR. KRATZIG:  Judge, another question if you

11  could tell me.  I am court appointed for the purpose

12  of this hearing and I want to discharge my duty to Mr.

13  Choyce.  I believe these objections were filed prior

14  to my coming onboard.  Do you perceive it as my role

15  to consider the objections and make any filings -- I

16  don't know if there's a prior counsel handling this

17  or not that I need to coordinate with.

18          THE COURT:  There was no attorney appointed

19  in the case before you were appointed, Mr. Kratzig.

20          MR. KRATZIG:  For some reason, I'll review

21  these objections and wish to make a filing and I need

22  to get on with it.

23          THE COURT:  You certainly can do that, yes,

24  sir.

25          MR. KRATZIG:  Okay.  All right.

1    THE COURT:  I guess you don't know if you

2  want to do that or not.

3    MR. KRATZIG:  No, I need to take a closer

4  look at them.  Frankly, I was traveling pretty much

5  with your memorandum and order -- had been previously

6  approved and so forth and my understanding of the

7  hearing, in fact, is pretty much -- I read your order

8  fairly carefully and the purpose of the hearing was to

9  determine facts surrounding the claim that Mr. Choyce

10  was denied his constitutional right to due process

11  when Officer Hester was not called as a witness.

12    THE DEFENDANT:  Right.

13    MR. KRATZIG:  And if the hearing is to go

14  beyond that, then I'd sure like it if somebody would

15  tell me at this point because I'm quite frankly

16  considering issuing a subpoena for Officer Hester.

17  That's something I don't know where I stand on that.

18    THE COURT:  As far as I know, that is the

19  issue that was unresolved --

20    MR. KRATZIG:  If that issue is resolved as to

21  whether he should or should not have been called, then

22  assuming that the issue is resolved in favor of Mr.

23  Choyce, does that imply a subsequent hearing before

24  Your Honor or back in the -- remand to the prison

25  authorities?  In other words, I don't want to clutter

1  the court's docket by issuing a subpoena for Mr.

2  Choyce and I apologize to the Court, I've done a

3  couple of -- I've done several 2254's and 2255's, I'm

4  not a stranger to them but I have to admit that this

5  particular scenario I've not handled one of these

6  before.   Prisoner hearing -- I didn't want to -- my

7  instinct as an attorney, of course, is to call my

8  witnesses.

9         THE COURT:   You're certainly free to call

10  your witnesses and I would hope that in terms of any

11  evidentiary issues that we can resolve them all at the

12  one hearing that's held in front of me, but then I

13  will be preparing a memorandum and recommendation and

14  Judge Head will make the final decision.   There's also

15  a possibility that he may want to re-hear this -- he

16  hasn't in previous cases but that doesn't mean that he

17  wouldn't but if he were to -- if his order does not

18  dispose of the case entirely, it would go back to the

19  prison, yes.

20         MR. KRATZIG:   Then, Your Honor, let me --

21  while Ms. Villarreal's on the phone, it is my

22  intention then at this point to request the Court to

23  approve a subpoena to Officer Hester.   Now, the

24  problem is if he's under the control of the prison, if

25  he's still employed by the prison, and I'd like to

1  know what Ms. Villarreal's position on that would be

2  as far as making him available or not making him

3  available.  It's a little hard for me to -- if I have

4  a subpoena issued, then it's not like an ordinary case

5  where I can have a process server or one of the

6  Marshals can serve it or whatever, since the man is --

7       THE COURT:  Ms. Villarreal, can you check

8  into that and let us know if he can be made available

9  for the hearing and if the position -- I'm going to

10  order that he be produced for the hearing and if he no

11  longer works for TDCJ, what I would ask you to do is

12  to file then under seal, or actually provide to Mr.

13  Kratzig with the understanding that the address not be

14  provided to Mr. Choyce, the last known address of Mr.

15  Hester.  I don't know what else to do other than to

16  have you go out and depose him which is going to

17  increase the cost at this end.  Ms. Villarreal, and if

18  you have an objection to that order, you can file

19  something within five days.  Would that take care of

20  that, Mr. Kratzig?  What happens in civil rights cases

21  all the time is if the person is no longer employed by

22  TDCJ and won't come voluntarily, then TDCJ will search

23  their records and give us at least the last known

24  address of the person.  We can act from there and you

25  could file a motion for issuance of a subpoena at that

1  point if we get that address.

2      MR. KRATZIG:  At this point, if Ms.

3  Villarreal will advise -- if there's no objection,

4  then she can advise me as to whether he'll be brought

5  by the prison authorities, right?

6      MS. VILLARREAL:  Okay.  I'm not even sure.

7  I've never heard of exactly having the disciplinary --

8  I mean the disciplinary officer called to an

9  evidentiary hearing.  Normally, it's handled, you

10  know, as to what happened at the hearing and if

11  there's a deficiency in the hearing, then the remedy

12  would be to send it back to TDCJ for him to have

13  another hearing conducted.  So I'm not entirely sure

14  that having the Officer Hester there --

15      THE COURT:  If you don't have Officer Hester

16  there, don't I have to assume that Officer Hester

17  would have -- we don't know at this point what he even

18  would have said.

19      MS. VILLARREAL:  The record does show what

20  was submitted by Officer Hester, and there is a

21  witness statement that was submitted by Officer

22  Hester, so there is his statement and that's referred

23  to on the hearing report as the reason justifying

24  finding of guilt.  I would argue that that's simply

25  not relevant or is outside the scope of what we're

1  addressing here, I think.

2          THE COURT:  Well, it might be but I think --
3  I mean, unless TDCJ wants to voluntarily give Mr.
4  Choyce another hearing, I see the evidentiary hearing
5  as the opportunity for the petitioner to put on his
6  best case and I don't know what else to do other than
7  to grant -- than to order him produced.

8          MS. VILLARREAL:  Okay.  Let me --

9          THE COURT:  But if you have an objection to
10  that, you can file an objection within ten -- within
11  five days of today's date.  In other words, let's say
12  by next Friday.

13          MS. VILLARREAL:  Okay.

14          THE COURT:  If you intend not to produce Mr.
15  Hester.

16          MS. VILLARREAL:  And if I'm ordered by the
17  Court, obviously we'll produce him, but I just -- I
18  don't want to sound like I'm not going to follow --
19  comply with any court order, but --

20          THE COURT:  No, I understand.

21          MS. VILLARREAL:  Yeah, I did object to -- I
22  mean his bearing there, the necessity for him being
23  there.

24          THE COURT:  Okay, I'm going to order him
25  produced and if you don't want to produce him then

1 file a pleading with your formal objections by next

2 Friday.

3          MS. VILLARREAL:  Okay.

4          THE COURT:  Okay?

5          MS. VILLARREAL:  Yes, Your Honor.

6          THE COURT:  Mr. Kratzig, anything further?

7          MR. KRATZIG:  Nothing further, Your Honor.

8          THE COURT:  Ms. Villarreal, anything further?

9          MR. KRATZIG:  Excuse me, there is one thing,

10 Your Honor.  Reference is made to the record of the

11 hearing in the lower court.  Is that record of the

12 hearing with the court here in Corpus Christi at this

13 point?

14          THE COURT:  You're talking about which

15 hearing now?

16          MR. KRATZIG:  Hearing before the prison

17 authorities.  Is that the record of the hearing Ms.

18 Villarreal was referring to?  The record of the

19 hearing in the prison?

20          THE COURT:  Ms. Villarreal -- are you talking

21 about what's on the audiotape?

22          MR. KRATZIG:  No, it's clear the audiotape

23 and the -- that is what -- the record of the

24 disciplinary hearing that was held December 21, '98 is

25 what you're having transcribed?

1        MS. VILLARREAL:  Right.

2        MR. KRATZIG:  Okay.  I just wanted to be sure

3   I heard you correctly.

4        MS. VILLARREAL:  Yeah.

5        MR. KRATZIG:  That's fine, Your Honor.  I

6   just wanted to make sure about it.

7        THE COURT:  All right, and, Ms. Villarreal,

8   you'll bring with you then a transcript along with the

9   tape that we released, you'll bring that with you to

10  the hearing?

11       MS. VILLARREAL:  Yes, Your Honor.

12       MR. KRATZIG:  She's going to send me a copy

13  in advance.

14       THE COURT:  Okay.  Anything else we need to

15  address as long as I've got you all on the phone, Ms.

16  Villarreal?

17       MS. VILLARREAL:  No, Your Honor.

18       THE COURT:  Mr. Kratzig?

19       MR. KRATZIG:  Nothing further, Your Honor.

20       THE COURT:  I will prepare a memo for Judge

21  Head and let him know that these issues are

22  outstanding and then he can make a decision.  If he

23  wants to stay the hearing, I certainly will do that

24  and he may rule on the objections.  I'm not sure what

25  he'll do, but I will let him know that those matters

1  are outstanding and that a hearing is scheduled.

2          MS. VILLARREAL:  Okay, thank you, Your Honor.

3          MR. KRATZIG:  Thank you.

4          THE COURT:  Thank you very much for your

5  time.

6       (Hearing adjourned at 11:05 a.m.)

7                    *  *  *  *  *

8

9

10

11

12

13

14

15

16

17

18

19  Transcribed by Jean Bartz.

20

21     I certify that the foregoing is a correct
   transcript from the electronic sound recording of the
22  proceedings in the above entitled matter.

23

24                                        February 22, 2002

25  Jean Bartz